-IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA THOMPSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AT&T CORP., )<br>)<br>Defendant. )<br>) | 2:03cv33 |

### MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for consideration and disposition is DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT, with brief in support (*Document Nos. 21 & 23*). The issues have been fully briefed. *See* Document Nos. 30 & 38. For the following reasons, the Motion will be granted in part and denied in part.

Background

Defendant AT&T ("Defendant") operates a Customer Sales and Service Center ("CSSC") in the Strip District of Pittsburgh. Pltf's Resp. to Def's Facts at ¶ 1. The CSSC is one of several AT&T call centers that handles billing and customer service calls from Defendant's local and long distance customers. *Id*. at ¶ 2. Plaintiff Dana Thompson ("Plaintiff") was hired by Defendant as a customer service representative and commenced work on September 20, 1999. *Id*. at ¶ 11.[1] Plaintiff has a history of seizures and panic attacks and has been diagnosed with epilepsy. *See id.* at ¶ 147-151.

Satisfactory attendance and adherence to one's schedule at the CSSC was critical. Employees were expected to "be at work on all scheduled work days, arrive at work on time and remain at work during scheduled hours, and start and return on time from meal periods and other authorized breaks." *Id*. at ¶ 13. The CSSC maintained a strict conformance policy, which

---

[1] Plaintiff was hired as a "term employee," which is defined as "a regular employee who is engaged in a specific project or for a limited period normally not less than one (1) year nor more than three (3) years with a definite understanding that employment may terminate on or before completion of the project or at the end of the period." *Id*. at ¶ 6.

required customer service representatives to adhere strictly to their daily schedule in order to assure that they were on-line and taking customer calls. *Id*. at ¶ 27.

Employee absences at the CSSC fell into two (2) categories: "chargeable" and "non-chargeable." *Id*. at ¶ 15. "Chargeable" absences were counted against an employee's attendance record for disciplinary purposes; "non-chargeable" (*i.e.*, excused) days included excused unpaid days, funeral leave and leave which qualified under the Family and Medical Leave Act ("FMLA"). *Id*. at ¶¶ 16-17.

On September 16, 2000, Plaintiff, while at work, experienced either a panic attack or an anxiety attack before her shift began. *Id*. at ¶ 54. Plaintiff subsequently applied for intermittent FMLA leave due to panic attacks and/or seizures; Defendant's FMLA Center approved the request for possible absences of 1-2 days per month, doctor appointments every 1-2 months, and other appointments as needed. *Id*. at ¶¶ 61, 63. Plaintiff submitted additional requests for FMLA leave during the course of her employment with Defendant. Defendant generally granted those requests until Plaintiff had exhausted all of the leave to which she was entitled. However, there is a dispute as to whether Defendant properly counted a few of Plaintiff's absences as "FMLA" days.

In early September 2000, Shelley Haddox ("Haddox") became Plaintiff's supervisor. *Id*. at ¶ 53. Plaintiff and Haddox often clashed in the workplace due to issues regarding Plaintiff's attendance. The record reflects that from time to time Plaintiff was unable to conform to her daily schedule and meet Defendant's strict attendance requirements, and as a result she received a few verbal warnings, a written "Attendance Warning" and a written "Warning for Misuse of Company Time." *Id*. at ¶¶ 97, 120. The record also reflects that Haddox had little sympathy for Plaintiff's epileptic condition or the symptoms of epilepsy, *i.e.*, Plaintiff's seizures, panic attacks and the related absences from work. There is also evidence that Haddox harbored a very negative attitude toward employees who used FMLA leave such as Plaintiff.[2]

---

[2] For example, one of Plaintiff's co-workers testified that Haddox "didn't like anybody that had FMLA." Thomas dep. at 15.

Plaintiff complained to Defendant's "EO" office that she was harassed and discriminated against by Haddox. *Id*. at ¶ 209. Plaintiff also filed a Charge of Discrimination with the EEOC on February 22, 2002 in which she alleged race, sex and disability discrimination, as well as retaliation, due to her strained relationship with Haddox. *Id*. at ¶ 215. On September 19, 2002, the EEOC rendered a Determination in which it found that Haddox discriminated against Plaintiff on the basis of her disability. Specifically, the EEOC found that Plaintiff was denied a transfer to a customer service specialist ("CSS") position due to unlawful discrimination by Haddox.[3] Complaint, exh. C. at unnumbered 2.

On September 30, 2002, Plaintiff was "work completed," *i.e.* terminated, by A.R. Lewis ("Lewis"), who was Defendant's Attendance Manager. *Id*. at ¶ 228. According to Defendant, Lewis was directed by the management team of the CSSC to "work complete" those term employees who were unsatisfactory in either their attendance or performance. *Id*. at ¶ 221. Defendant also contends that said employees, including Plaintiff, were "work completed" due to the lack of a business need, *i.e.*, lower customer call volume. *Id*. at ¶ 222.

On January 8, 2003, Plaintiff filed a Complaint which alleges unlawful discrimination and failure to accommodate, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., as amended ("ADA"), unlawful interference with rights and unlawful retaliation, in violation of the FMLA, 29 U.S.C. § 2601 *et seq*., and violations of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq*. ("PHRA"). On June 17, 2003, Plaintiff filed another Complaint at Civil Action No. 03-905 (the "Second Complaint"). The Second Complaint incorporated her earlier Complaint and added an additional claim for unlawful retaliation, in violation of the ADA. The Second Complaint was subsequently consolidated with the instant case. Defendant has moved for summary judgment on all of Plaintiff's claims.

---

[3] Defendant contends that the denial of the transfer to this position was not an "adverse employment action" because the transfer would have been a lateral transfer, which is insufficient to qualify as an adverse employment action. Def's Brief at 18. However, Plaintiff contends that the transfer would not have been a lateral transfer because she would have become a "regular" as opposed to a "term" employee, and because she would have received an increase in pay. Thompson aff. at ¶ 3.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

[Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993).

Discussion

A.  Alleged Violations of the ADA and the PHRA

   1.  Unlawful Discrimination

A plaintiff establishes a *prima facie* case of discrimination under the ADA by demonstrating: (1) she is a disabled person within the meaning of the ADA, *i.e.*, a "qualified individual with a disability";[4] (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an

---

[4]. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002).

otherwise adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (*citing Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir.1996)).[5]

Defendant argues that Plaintiff's discrimination claim must fail because she does not have a "disability" under the ADA, as defined by 42 U.S.C. § 12102(2). Pltf's Br. at 3. Under the ADA, a "disability" is:

(A)  a physical[6] or mental impairment that substantially limits one or more of the major life activities of such individual;

(B)  a record of such impairment; or

(C)  being regarded as having such impairment.

42 U.S.C. § 12102(2); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002).

The ADA does not specifically define "major life activities." However, the EEOC regulations define the term as those activities that are of "central importance to most people's daily lives." 45 C.F.R. § 84.3(j)(2)(ii); *Toyota Motor*, 534 U.S. at 197. This means "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii). The Court of Appeals for the Third Circuit has "held only extremely limiting disabilities - in either short or long-term -- to qualify for protected status under the ADA." *Marinelli v. City of Erie, Pennsyvlania*, 216 F.3d 354, 362 (3d Cir. 2000).

---

[5] Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996). The anti-retaliation and anti-discrimination provisions found in the ADA and PHRA are not materially different. Therefore, the Court's analysis of Plaintiff's ADA retaliation and discrimination claims apply with equal force to her PHRA retaliation and discrimination claims. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375 (3d Cir. 2002). The Complaint does not state a cause of action for failure to accommodate under the PHRA.

[6]. A "physical impairment" is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine." 29 C.F.R. § 1630.2(h).

In *Sutton v. United Air Lines*, *Inc.*, 527 U.S. 471 (1999), the United States Supreme Court stated that under the ADA:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. *A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity.* To be sure, a person whose physical or mental impairment is corrected by mitigating measures, still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.

*Id.* at 482-83 (emphasis added). Thus, the Supreme Court directed that an individualized inquiry must be made as to whether a person is disabled under the ADA, having stated that the:

> use of a corrective device does not, by itself, relieve one's disability. Rather, one has a disability under subsection (A) if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity . . . The same may be true of individuals who take medicine to lessen the symptoms of an impairment so that they can function but nevertheless remain substantially limited . . . The use or nonuse of a corrective device [or medication] does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment actually faces are in fact substantially limiting.

*Id.* at 488.

      a.    <u>Is Plaintiff "Actually Disabled"?</u>

The Complaint alleges that "[f]rom the date that [Plaintiff] was diagnosed with epilepsy, she has had a physical impairment that substantially limits one or more of her major life activities, has record of (*sic*) such an impairment, and was regarded by Defendant as having such an impairment ..." Complaint at ¶ 76. The Complaint does not identify which "major life activity" is alleged to be substantially limited due to Plaintiff's epilepsy. However, Plaintiff testified during her deposition that she was unable to drive, "possibly shouldn't have children," needs someone to care for her after she has a seizure, and needs an adult present when she showers in case of a seizure. Additionally, based on the parties' filings there is an issue as to whether Plaintiff is substantially limited in the major life activity of working due to her epilepsy.

The Court finds and rules that no reasonable fact finder could find that Plaintiff is substantially limited in a major life activity. Therefore, no reasonable fact finder could find that Plaintiff is actually disabled. As to Plaintiff's inability to drive, the Court finds and rules that

driving *is not* a "major life activity" as defined by the ADA.[7] With regard to Plaintiff's testimony that she "possibly shouldn't have children," it is clear that childbearing *is* a major life activity. *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998). However, it is undisputed that Plaintiff delivered her first child in March of 2003 and, at the time that the instant Motion was filed, expected a second child in March of 2005. Pltf's dep. at 9; Slizik dep. at 5-6.[8] Given these facts, no reasonable fact finder could find that Plaintiff is substantially limited in the major life activity of reproduction. Moreover, Plaintiff's testimony that she needs someone to care for her after she has a seizure,[9] and needs an adult present when she showers in case of a seizure, does not establish that she is substantially limited in the major life activity of caring for herself. A plaintiff is "substantially limited" if he or she is "[u]nable to perform a major life activity that the average person in the general population can perform," or, alternatively, is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 782-83 (3d Cir. 1998) (*quoting* 29 C.F.R. § 1630.2(j)(1)(i)-(ii)). There is no doubt that Plaintiff experiences some difficulties in caring for herself after she experiences an epileptic seizure, and the Court is not insensitive to her condition

---

[7] *See, e.g.*, *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329-30 (11th Cir. 2001) (driving to work is not a major life activity in case involving plaintiff with epilepsy); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 643 (2d Cir.), *cert. denied*, 526 U.S. 1018, (1999); *Tedeschi v. Sysco Foods of Philadelphia, Inc.*, 2000 WL 1281266, *5 (E.D. Pa. Sept. 5, 2000) ("courts have concluded that driving is not the type of endeavor that may be characterized as a major life activity. Therefore, Mr. Tedeschi's alleged inability to drive cannot independently support his ADA claim.") (citation omitted).

[8] Although Plaintiff testified that her first child was born premature (after 36-37 weeks; Pltf's dep. at 9), there is no evidence that her ability to reproduce is limited in any significant way.

[9] Plaintiff testified at her deposition that after a seizure she has trouble lifting herself out of bed, is unable to take a shower or bath, and is 'unable to use any kind of major appliance for fear that [she] would not be able to turn it off." Pltf's dep. at 528.

or its effects. However, the limitations articulated by Plaintiff at her deposition are not sufficient to establish that she is *significantly restricted* in her ability to care for herself when compared to the abilities of the average person in the general population.

Finally, the Court finds and rules that Plaintiff is not substantially limited in the major life activity of working.[10] Thompson did not testify that she is substantially limited in the major life activity of working. The only limitation in the workplace identified by Plaintiff was "being in an atmosphere where I was able to successfully do my job completely without the stress and harassment of a manager." Pltf's dep. at 531-32. Plaintiff also testified that if she was not working for Haddox she was able to perform the job of customer service representative. *Id*. at 334.

In *Sutton*, *supra*, the Supreme Court addressed the standard for determining whether an individual is substantially limited in the major life activity of "working." As the Court explained:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton*, 527 U.S. at 492.[11]

Plaintiff has admitted, and the record clearly reflects, that the stress caused by Haddox

---

[10] Our court of appeals has instructed that "[i]f the court finds that the individual is substantially limited in any ... major life activities [other than working], the inquiry ends there." *Mondzelewski*, 162 F.3d at 784. "On the other hand, if the individual is not so limited, the court's next step is to determine whether the individual is substantially limited in the major life activity of working." *Id.*

[11] The EEOC has specified that in order for one to be properly characterized as substantially limited from working, an individual must be unable "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). To the contrary, the mere "inability to perform a single, particular job" will not suffice to establish a substantial limitation with respect to working. *Id. See also Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523 (1999) ("[t]hus, to be regarded as substantially limited in the major activity of working, one must be regarded as precluded from more than one particular job.").

8

was the major impediment to her ability to successfully perform her duties, which is insufficient to establish that Plaintiff is substantially limited in the major life activity of working. *See* Pltf. dep. exh. 79A; *Weiler v. Household Finance Corp.*, 101 F.3d 519, 526 (7th Cir. 1996) ("The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance.").

b. Was Plaintiff "Regarded As" Disabled?

The Court must consider whether there is sufficient evidence for a fact finder to find that Plaintiff was "regarded as" disabled by Defendant. In order to be covered under the "regarded as" prong of the ADA, the employer must "regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." *Rinehimer v. Cemcolift*, Inc., 292 F.3d 375, 381 (3d Cir. 2002). In order to determine whether Defendant regarded Plaintiff as disabled, the Court must consider the information Defendant had regarding Plaintiff's condition and its response to that information. *Buskirk v. Apollo Metals*, 307 F.3d 160, 167 (3d Cir. 2002). "[E]ven an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144 (3d Cir.1998) (*en banc*). Additionally, the analysis "focuses not on [the plaintiff] and his actual disabilities, but rather on the reactions and perceptions of the persons interacting or working with him." *Kelly*, 94 F.3d at 108-09 (stating that the "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate ... that the employer regarded the employee as disabled").[12] Finally,

---

[12] According to EEOC regulations, the "regarded as having such an impairment" provision applies to anyone who:
> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has [no such impairment] but is treated by a covered entity as having a

"an employer's perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim." *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999).

The Court finds and rules that a reasonable fact finder *could find* that Defendant regarded Plaintiff as disabled or otherwise substantially limited because she could not perform a wide range of jobs. *See, e.g*, Pltf's dep. at 928 ("I was constantly reminded and told by Shelley Haddox that there were certain jobs that my being disabled and having a disability couldn't do (*sic*)."). This evidence, along with considerable evidence of record that Defendant was informed of Plaintiff's epilepsy throughout her employment, and that Plaintiff's rights under the ADA were "out in the open," so to speak, during various meetings between Plaintiff, Haddox and others, suffices to create a genuine issue of material fact as to whether Plaintiff was "regarded as" disabled by Defendant. *See also Taylor*, 177 F.3d at 192 ("An employer who regards a kind of impairment – epilepsy, for example – as disqualifying all people affected by the impairment for a wide range of jobs is thus not entitled to a defense of reasonable mistake ...").[13]

The Court must determine whether the remaining elements of a *prima facie* case of disability discrimination are satisfied. Defendant contends that Plaintiff was not qualified to perform the job due to her attendance problems (which, according to Plaintiff, were due to her conflict with Haddox). However, there is sufficient evidence of record for a reasonable fact finder to conclude that Plaintiff was qualified to perform the essential functions of her job. In the view of the Court, this is an issue that must be submitted to a fact finder.

Defendant also contends that the written reprimands and warnings that Plaintiff received are not adverse employment actions. In order for written reprimands to qualify as adverse employment actions, a plaintiff must demonstrate "that the[] written reprimands affected the

---

substantially limiting impairment.
29 CFR § 1630.2(l). The Third Circuit has endorsed this definition in *Rinehimer*, *supr*a, and did so earlier in *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir.1999).

[13] Plaintiff completed, and later updated, self-identification forms in which she identified herself as disabled under the ADA. Therefore, according to Plaintiff, she has a "record of such impairment" and therefore there is *prima facie* evidence that she is "disabled." Defendant has not raised this issue, and therefore the Court declines to make a determination in that regard.

terms or conditions of his employment." *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001). It is not sufficient "if the reprimands were placed in [Plaintiff's] personnel file for a period of six months." *Id*. It may be sufficient, however, if the plaintiff was "denied any pay raise or promotion as a result of the[] reprimands." *Id*. Defendant's own brief reflects that Plaintiff was "work completed" because she "had been issued an attendance warning and had an unsatisfactory attendance rating." Def's Br. at 21. There is also evidence that the written warnings and reprimands were a substantial factor in Haddox's decision not to recommend Plaintiff for a CSS position, and in Defendant's decision to terminate Plaintiff's employment. *See, e.g.*, Thompson aff. at ¶ 3. Therefore, a reasonable fact finder could conclude that the written reprimands and warnings that Plaintiff received were adverse employment actions. Finally, the termination of Plaintiff's employment was clearly an adverse employment action.

As to whether these adverse employment actions were "as a result of discrimination," the evidence of record, viewed in the light most favorable to Plaintiff, is sufficient to satisfy the requirements of a *prima facie* case.

Defendant has set forth legitimate, nondiscriminatory reasons for its treatment of Plaintiff, *i.e.*, performance-based reasons for her treatment and ultimate termination from employment. However, Plaintiff's treatment by Haddox amounts to evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons for its action, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Therefore, the Court will deny Defendant's Motion as to Plaintiff's claim of ADA discrimination.

There is, however, one aspect of Plaintiff's ADA discrimination claim which cannot survive summary judgment. The Court finds and rules that there is not sufficient evidence to establish that Defendant was involved with the denial of Plaintiff's disability benefits claim through MetLife. Defendant has established that it "had no involvement in MetLife's decision to deny disability benefits" to Plaintiff. *See* Judson Verification at ¶ 16. Plaintiff has presented no evidence to the contrary. Therefore, summary judgment as to this aspect of Plaintiff's ADA

discrimination claim will be granted. This finding also applies to Plaintiff's contention that the termination of her disability benefits was due to retaliation under the ADA and/or the FMLA.

    2.    <u>Failure to Accommodate</u>

The ADA prevents an employer from failing to provide "a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case of failure to accommodate, Plaintiff must prove: (1) she is an individual with a disability under the ADA;[14] (2) she can perform the essential functions of her position with an accommodation, (3) her employer had notice of the alleged disability, and (4) the employer failed to accommodate her. *Conneen v. MBNA America Bank,* 182 F. Supp. 2d 370, 378-79 (D. Del. 2002). Based upon the foregoing discussion, and upon evidence that Defendant (primarily Haddox) generally did not endeavor to accommodate Plaintiff, the Court finds and rules that Plaintiff has adduced *prima facie* evidence in support of her claim for failure to accommodate. Therefore, summary judgment as to this claim will be denied.

    3.    <u>Unlawful Retaliation</u>

Plaintiff alleges that Defendant retaliated against her for having filed a complaint with the EEOC on February 22, 2002 in the following ways:

- by disciplining her for alleged violations of Defendant's attendance policy for absences related to her disability;

- by disciplining her after she returned to work from disability leave, for alleged violations of Defendant's Code of Conduct while taking no action against similarly situated non-disabled employees who had committed the same or similar

---

[14] The Third Circuit has recently held that an employer is required to provide reasonable accommodations to an employee it perceives as disabled. *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 776 (3d Cir. 2004); *see also Buskirk v. Apollo Metals*, 307 F.3d 160, 168-69 & n.2 (3d Cir. 2002) (noting the circuit split on the issue and finding no need to resolve the "difficult question").

>    alleged violations;
> 
> •  by not giving Plaintiff the same options as Defendant gave its non-disabled term employees in July 2002; and
> 
> •  by terminating her employment on September 30, 2002.

Second Complaint at ¶¶ 4-6, 8.

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997); *see also Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).[15]  The parties' filings reflect that the first element is undisputed, and there is evidence that each of the actions alleged above satisfies the second element.  There is also sufficient evidence of a causal connection between her protected activity, on the one hand, and the discipline imposed upon Plaintiff, as well as the decision by Haddox to not recommend her for the permanent CSS position.  Thus, Plaintiff may maintain her ADA retaliation claim to the extent that it is based on these adverse employment actions.[16]

With respect to Plaintiff's termination, there is evidence that the ultimate decision was neither made nor influenced by Haddox, and that Lewis was not involved with or aware of Plaintiff's alleged mistreatment by Haddox.  Lewis testified at his deposition that either Larry Luzier or Gloria Nelson actually made the decision to terminate Plaintiff due to her

---

[15]. The burden-shifting framework of *McDonnell Douglas* applies to ADA retaliation claims. *See Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667-68 (3d Cir. 1999).  Additionally, a plaintiff need not be a "qualified individual with a disability" to maintain an ADA retaliation claim.  *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003).

[16] The parties' briefs do not address the second and third steps of the *McDonnell Douglas* framework in detail.  It is obvious, however, that Defendant has proffered legitimate, nondiscriminatory reasons for each action that has been taken with regard to Plaintiff.  However, based primarily on Plaintiff's treatment by Haddox, the Court finds and rules that there is sufficient evidence of pretext to allow the claim of retaliation to survive summary judgment.

unsatisfactory attendance. Lewis dep. at 199-200. Plaintiff contends that Haddox "set [her] up for termination ... by issuing her the unwarranted attendance warning." Pltf's Br. at 26. The record is not entirely clear as to who was the ultimate decision-maker to terminate Plaintiff's employment, and therefore no determination can be made as to the sufficiency of the evidence in that regard. Thus, the issue of whether Plaintiff's termination was motivated by retaliatory animus must also be submitted to the fact finder.

Additionally, as the Court has already found, there is *insufficient* evidence that Defendant was involved with the denial of Plaintiff's disability benefits claim through MetLife, and therefore Plaintiff cannot use this adverse employment action as the basis of her ADA retaliation claim. Therefore, subject to this limitation, summary judgment as to Plaintiff's claim of unlawful retaliation will be denied.

B.   Alleged Violations of the FMLA

Under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, an employee is entitled "to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). Two distinct types of rights are contained in the FMLA. *See generally Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159-60 (1st Cir. 1998). Some courts have characterized these rights as "prescriptive," or substantive rights, and "proscriptive" rights. *See id.* Prescriptive rights encompass to the right to take twelve weeks of unpaid leave under certain circumstances, while proscriptive rights relate to the protection that is afforded to an employee in the event that he or she experiences discrimination or retaliation in response to the exercise of the prescriptive rights established by the FMLA. *Id*.

1.   Prescriptive Rights

With respect to prescriptive rights, 29 U.S.C. § 2612(a)(1) provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." It is the plaintiff's burden to demonstrate that she was entitled

14

to a benefit under the FMLA, but was denied that benefit. *Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 570-571 (M.D. Pa. 2004).

Defendant contends that it provided Plaintiff with all of the FMLA leave to which she was entitled, and therefore it cannot be liable for a denial of Plaintiff's right to FMLA leave. *See* Pltf's Br. at 10-11; *see also Campetti v. Career Education Corp.*, 2003 WL 21961438, *13 (E.D. Pa.) ("Plaintiff cannot sustain an FMLA 'interference' claim because he was never denied any FMLA leave"). Plaintiff, on the other hand, contends that she did not receive proper notice that a few days when she was absent would be counted toward her entitlement to FMLA leave, and that Defendant otherwise improperly designated a few of Plaintiff's absences as covered by the FMLA. Pltf's Br. at 2-6. In essence, Plaintiff contends that Defendant "short-changed" her with respect to approximately 5 days of FMLA entitlement, including some half-days.

Plaintiff's contention that her absences on December 7, 2000, December 30, 2000, January 10, 2001 and April 12, 2001 were improperly counted is belied by the fact that these absences were covered by her requests for "intermittent" FMLA leave due to panic attacks/ seizure disorder. O'Hara aff. at ¶¶ 4-5, 11-12. Contrary to Plaintiff's argument, under the applicable regulation Defendant was only required to give her one notice of designation. 29 C.F.R. § 825.208(a). However, there appears to be sufficient evidence for a reasonable fact finder to conclude that Plaintiff's absences on April 5 and May 19 of 2001 were improperly counted as FMLA leave, and therefore Plaintiff may have been wrongly denied the ability to take two additional days of FMLA leave which she later requested due to a ruptured ovarian cyst. *See* Pltf's Br. at 4. Therefore, the Court will deny summary judgment as to Plaintiff's claim that she was improperly denied FMLA leave.

### 2.     Proscriptive Rights

With respect to proscriptive rights, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). A claim for a violation of the proscriptive rights provided by the FMLA is akin to a claim of retaliation under other federal

15

employment discrimination statutes.

Plaintiff alleges that Defendant retaliated against her, in violation of the FMLA, by taking the following actions:

- by denying her a promotion to a permanent CSS position;
- by disciplining her for alleged violations of Defendant's attendance policy for absences related to her FMLA leave;
- by disciplining her after she returned to work from FMLA leave for alleged violations of Defendant's Code of Conduct while taking no action against similarly situated non-disabled employees who had committed the same or similar alleged violations;
- by not giving Plaintiff the same options as Defendant gave its non-disabled term employees in July 2002; and
- by terminating her employment on September 30, 2002.

Complaint at ¶¶ 99-102, 104.

The proper framework for analysis of an FMLA "retaliation" claim is the burden shifting framework established by *McDonnell Douglas Corp. v. Green, supra*. *See Hodgens*, 144 F.3d at 160; *Williams*, 986 F. Supp. at 318. Accordingly, to make out a *prima facie* case of retaliation, Plaintiff must show that 1) she availed herself of a protected right under the FMLA; 2) she was adversely affected by an employment decision; and 3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Hodgens*, 114 F.3d at 161.[17] If Plaintiff makes out a *prima facie* case of retaliation, the burden shifts to

---

[17] However, our court of appeals has recently opined, but did not explicitly hold, that a claim that an employee has been *discharged* in retaliation for having taken FMLA leave is predicated upon 29 C.F.R. § 825.220(c), and "does not come within the literal scope of the sections of the FMLA directed to retaliation." *Conoshenti v. Public Service. Elec. & Gas Co.*, 364 F.3d 135, 146 n.9 (3d Cir. 2004). Section 825.220(c) provides, in relevant part, that "[a]n employer is prohibited from discriminating against employees ... who have used FMLA leave," and "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions ..." Plaintiff's FMLA "retaliation" claim encompasses allegations of pre-termination retaliation and retaliatory discharge. Regardless of

Defendant to proffer a nondiscriminatory reason for its adverse employment actions; if Defendant satisfies this burden, Plaintiff must demonstrate that the proffered nondiscriminatory reasons were pretextual. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1065-67 (3d Cir. 1996). There is no doubt that Plaintiff availed herself of a protected right under the FMLA, and based on the foregoing discussion the Court finds and rules that the remaining elements of a *prima facie* cause of retaliation are satisfied. As the Court has already found, although Defendant has proffered legitimate, nondiscriminatory reasons for its actions, there is sufficient evidence for a fact finder to conclude that said reasons are pretextual. Therefore, the Court will deny the motion for summary judgment as to Plaintiff's FMLA retaliation claim.

Conclusion

    For the reasons hereinabove stated, Defendant AT&T's Motion for Summary Judgment will be granted in part and denied in part. An appropriate Order follows.

    McVerry, J.

---

the statutory basis for Plaintiff's allegations of retaliation, nothing indicates that the elements of a *prima facie* case of retaliation should be formulated differently based on the statutory foundation for each allegation. Therefore, the Court will analyze Plaintiff's claim of retaliatory discharge under the same elements that otherwise apply to a *prima facie* case of FMLA retaliation.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA THOMPSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 2:03cv33 |
| AT&T CORP., | ) ) ) |
| Defendant. | ) ) |

### ORDER OF COURT

AND NOW, this 12th day of January, 2006, in accordance with the foregoing Memorandum Opinion it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant AT&T's Motion for Summary Judgment is **GRANTED IN PART** on Plaintiff's claims regarding denial and/or termination of disability benefits. In all other respects said Motion for Summary Judgment is **DENIED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:    Homer L. Walton, Esquire
       Email: hwalton@tuckerlaw.com

       Maureen P. Kelly, Esquire
       Email: mkelly@bccz.com